OPINION
Plaintiff-appellant, Ethel L. Pusey, individually and as the executrix of the estate of Derrell E. Pusey, deceased, appeals a judgment rendered by the Mahoning County Common Pleas Court, granting a directed verdict in favor of defendant-appellee, Greif Brothers Corporation, in this wrongful death and survivorship action.
Appellant is the mother of Derrell Pusey (decedent), who was killed by a gunshot wound to the head in the early morning hours of August 12, 1991, while he was on property owned by appellee. After the decedent's death, appellant, individually and as executrix of his estate, filed a wrongful death and survivorship action against appellee, as owner of the property; Youngstown Security Patrol, Inc., the security company which provided after-hours security guard services to appellee; and, Eric Bator, the security guard employed by Youngstown Security Patrol, Inc., who shot the decedent.
A jury trial commenced on October 20, 1994. Appellant then advised the trial court on October 21, 1994, that she had entered into settlement agreements with Youngstown Security Patrol, Inc. and Eric Bator. The jury trial thereafter continued with the presentation of evidence and testimony as between appellant and appellee.
Appellant's claims against appellee were set forth under the third, sixth and seventh counts of her complaint. The third count alleged that appellee had negligently employed Youngstown Security Patrol, Inc. and Eric Bator to provide security services when neither of them were qualified to provide such services. The sixth count alleged that appellee was negligent per se in employing Youngstown Security Patrol, Inc. and Eric Bator to provide security services when both were in violation of certain sections of R.C. 4749, et seq., which governs providers of security services in Ohio. The seventh count alleged that appellee was grossly negligent in causing and/or permitting Youngstown Security Patrol, Inc. and Eric Bator to engage in negligent conduct on its property.
On the morning of October 21, 1994, the jury was taken to view appellee's premises, where the shooting occurred. Upon their return, appellant began the presentation of her case. appellant offered the testimony of sixteen witnesses and some forty-seven exhibits. On October 26, 1994, appellant concluded her case, at which time appellee moved for a directed verdict pursuant to Civ.R. 50 (A). After recessing for one day, on October 28, 1994, the trial court issued a ruling from the bench granting appellee's motion for directed verdict. A judgment entry granting the directed verdict was entered upon the docket of the court the same day. However, copies of the written order were not issued to counsel of record by the clerk of courts until November 18, 1994.
Appellant appealed the trial court's decision to this court. On December 29, 1997, this court reversed and remanded, finding that the trial court did not comply with Civ.R. 50 (E) Pusey v. GreifBros. Corp. (December 29, 1997), Mahoning App. No. 94 C.A. 207, unreported, 1997 WL 816532. Upon remand, the trial court issued a judgment entry and order setting forth the basis for the directed verdict in compliance with Civ.R. 50 (E). Appellant subsequently filed a motion for a new trial, which the trial court overruled. This appeal followed.
Appellant's sole assignment of error on appeal alleges:
 "THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT AGAINST APPELLANT."
The standard which regulates the trial court's authority to grant a directed verdict is found in Civ.R. 50 (A) (4), which states:
 "When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
Further, a trial court may not weigh the evidence or try the credibility of witnesses in deciding a motion for directed verdict. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66. Rather, the trial court assumes the truth of the evidence which supports the facts essential to the non-moving party's claim, thereby giving the non-moving party the benefit of all reasonable inferences. Id. The trial court must determine only whether any evidence of substantive, probative value exists in support of a party's claim. Id.
Under Ohio law, an employer is generally not liable for the acts of an independent contractor. Strayer v. Lindeman (1981),68 Ohio St.2d 32, 34. However, there are several exceptions to this rule. One such exception to the independent contractor rule is that regarding a non-delegable duty. In Albain v. Fower (1990),50 Ohio St.3d 251, 257, the Ohio Supreme Court stated that non-delegable duties include those imposed by statute, contract, franchise or charter, or by common law.
Appellant contends that the trial court incorrectly determined that appellee was not liable for the tortious actions of Youngstown Security Patrol, Inc. Appellant sets forth three theories of liability including, the duty to provide a secure premise, the duty to prevent unlicensed security guards from carrying a firearm and vicarious liability of an employer with regards to actions by employees.
Appellant argues that two duties were imposed upon appellee under both R.C. 4749.06 and R.C. 4749.10. First, appellant argues that R.C. 4749.06 required that security guard employees be registered. Next, appellant argues that under R.C. 4749.10, a security guard must complete basic firearm safety before becoming certified to carry a firearm. Appellant contends that appellee breached both of these non-delegable duties. Appellant alleges that Eric Bator was neither registered as a security guard nor certified to carry a firearm. Therefore, appellant argues that in allowing Eric Bator to work on its premises as an unregistered security guard and carry a firearm even though he was not certified, appellee violated the prohibition of R.C. 4749.13 (C).
Appellee did not have a direct duty to ensure that Eric Bator was both registered as a security guard and certified to carry a firearm. These were the duties of Youngstown Security Patrol, Inc., who directly hired Eric Bator as a security guard. Appellee's duty was limited under R.C. 4749.13 (C), which requires that no person shall knowingly authorize another to violate any of the provisions of R.C. 4749, et seq. In the present matter, appellant did not present any evidence indicating that appellee knowingly permitted such violations. At the time that appellee hired Youngstown Security Patrol, Inc., it was in good standing, without any violations regarding registering its security guards. Furthermore, appellant did not present any evidence demonstrating that appellee knowingly permitted Eric Bator to carry a firearm without obtaining certification. Therefore, viewing the evidence in a light most favorable to appellant, reasonable minds could only have found that appellee did not violate R.C. 4749.13 (C).
Appellant next argues that appellee was vicariously liable for the actions of both Eric Bator and Youngstown Security Patrol, Inc. because appellee exercised sufficient control over both of them. The actions of an independent contractor are not attributable to a hiring party who does not retain the right of control over the mode and manner of the work performed by the independent contractor. See Albain, 50 Ohio St.3d at 257. To determine if appellee was the employer of Eric Bator, the trial court was required to determine who had the control or the means of performing work. In the case at bar, appellant did not present evidence indicating that appellee controlled Bator or Youngstown Security Patrol, Inc. The evidence presented indicated that appellee did not meet with either Youngstown Security Patrol, Inc. or Eric Bator to discuss the manner in which they performed the security services. (Tr. 386) Therefore, viewing the evidence in a light most favorable to appellant, reasonable minds could have only found that appellee was not vicariously liable for the actions of Eric Bator or Youngstown Security Patrol, Inc.
Finally, appellant argues that appellee had a non-delegable duty to provide a secure premise. Based upon a landowner's common law duty to refrain from willful, wanton, or reckless conduct which would be likely to injure a trespasser and the public policy underlying that duty, the appellant concludes that the duty is a non-delegable one. This appears to be a novel approach.
In the context of a residential lease, it has been held that a landlord may not shift to an independent contractor the responsibility of complying with laws designed for the physical safety of others, as those duties are nondelegable. Shump v.First Continental-Robinwood Assoc. (1994), 71 Ohio St.3d 414,421. In contrast, it has also been held that a landlord's nondelegable statutory duty for safety and well being of residential tenants does not apply to commercial premises.Knickerbocker Bldg. Services, Inc. v. Phillips (1984), 20 Ohio App.3d 158,161.
Other cases addressing non-delegable duties in the context of premises liability are ones involving a "storekeeper." In Fieldsv. Federated Dept. Stores, Inc. (July 29, 1993), Franklin App. No. 92AP-1628, unreported, 1993 WL 303617, the court observed that "a number of courts have declined to insulate a storekeeper from liability for work performed by an independent contractor on the business premises." Id., 1993 WL 303617 at *5 citing Annotation, Storekeeper's Liability for Personal Injury to Customer Caused by Independent Contractor's Negligence in Performing Alterations or Repair Work (1979), 96 A.L.R.3d 1213.
In Fields, plaintiff Fields was injured by a falling mirror while at a store owned by defendant Federated Department Stores, Inc. (Federated). Federated had hired defendant J.C. Moag (Moag) on an independent contractor basis to install the mirror one month earlier. Fields sued Federated and Moag and the trial court granted both defendants summary judgment. On appeal, the Tenth District reversed.
The court cited Section 422 of the Restatement of Torts which provides:
 "A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
 "(a) while the possessor has retained possession of the land during the progress of the work, or
 "(b) after he has resumed possession of the land upon its completion."
The court went on to state:
 "We think this principle provides that Federated had a nondelegable duty during the construction work and renovation of its [store] * * *. According to plaintiff's testimony, she was injured during such renovations and thus the exclusivity requirement of the res ipsa loquitur doctrine is met here. Hence, even if Moag was responsible for improperly gluing the mirror as an independent contractor, Federated would still would bear liability under the doctrine of res ipsa loquitur because of the nondelegable duty to protect patrons." (Emphasis added.) Id., 1993 WL 303617 at *5
A review of secondary authority reveals that it is a well recognized principle that a land occupier's duty of care to keep the premises reasonably safe for invitees may not be avoided by the employment of independent contractors. However, in this case we have a trespasser, not an invitee. "It is the duty of the owner of the premises to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition."Light v. Ohio University (1986), 28 Ohio St.3d 66, 68. However, a landowner owes no duty to a trespasser except to refrain from willful, wanton, or reckless conduct which is likely to injure him. Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 317.
There is no authority to support the proposition that a landowner's duty to refrain from willful, wanton, or reckless conduct which would likely injure a trespasser is a non-delegable duty. of the cases classifying a particular duty as a non-delegable duty based on public policy considerations, each dealt with some type of affirmative obligation on the part of the landowner. A landowner owes no such affirmative obligation towards a trespasser; his duty is only one of abstention. The same policy considerations that support the existence of a higher duty owed to invitees support recognition of that duty as a non-delegable duty. No such policy considerations underlie the minimal duty owed to trespassers.
Accordingly, appellant's sole assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Cox, J., dissents; see dissenting opinion, Vukovich, J., concurs.
 ____________________ Gene Donofrio, Judge